**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT BROWN,**

                         **Plaintiff,**

   vs.                                              9:10-cv-00986
                                                          (MAD/TWD)

**DR. DOUYON DE AZEVEDO, Upstate**
**Correctional Facility; DR. LESTER G. WRIGHT,**
**Deputy Commissioner/Chief Medical Office; JOHN**
**DOE, Doctor, Franklin Correctional Facility, and**
**JANE DOE, Nurse, Franklin Correctional Facility,**

                        **Defendants.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**ROBERT BROWN**
**06-A-6076**
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034
Petitioner *pro se*

**OFFICE OF THE NEW YORK**         **ADELE M. TAYLOR-SCOTT, AAG**
**STATE ATTORNEY GENERAL**         **AARON M. BALDWIN, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On August 16, 2010, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the United States Constitution. In a Decision and Order dated October 27, 2010, Judge Sharpe dismissed "The State of New York" and "The N.Y.S.D.O.C.S. Division of

Health Services" and all claims against them. *See* Dkt. No. 5. Currently before the Court are Defendants' motion for summary judgment and Plaintiff's motion to amend his complaint. *See* Dkt. Nos. 26, 53.

## II. BACKGROUND

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See* Dkt. No. 1 at ¶ 3. Plaintiff suffers from chronic pain due to conditions in his right hip and ankle. Plaintiff was transferred to Upstate Correctional Facility ("Upstate") on or about December 30, 2009. Before being transferred to Upstate, Plaintiff was prescribed a combination of two, ten mg tablets of Percocet, three times per day and 600 mg of Neurontin twice a day to manage his pain. *See id.* at ¶ 8.

On January 5, 2010, the medical staff at Upstate contacted Defendant Azevedo about ordering a refill of Plaintiff's prescription for Percocet, and advised him that Plaintiff had been on the drug for "some time." *See* Dkt. No. 26-3 at ¶ 9. In light of Plaintiff's long-term use of Percocet, Defendant Azevedo decided to substitute Ultram[1] as Plaintiff's primary analgesic. *See id.* at ¶ 17. Defendant Azevedo prescribed Plaintiff Ultram 50 mg three-times daily, in combination with Neurontin. *See id.* at ¶ 19.

According to Plaintiff's medical records, Plaintiff subsequently complained of various ailments but not of pain from the date that Plaintiff's prescription was changed, *i.e.*, January 5, 2010, until January 11, 2010. *See id.* at ¶ 20 (citing Dkt. No. 27 at 68-71).[2] On January 12, 2010,

---

[1] Ultram is a brand name of Tramadol, which is milder than Percocet and has less addictive potential.

[2] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

Plaintiff complained to the medical staff at Upstate about recurring hip and ankle pain, and Defendant Azevedo evaluated him on the following day. *See id.* at ¶ 21. On January 13, 2010, Defendant Azevedo concluded that Plaintiff's right hip and ankle pains were not sufficiently controlled under his new prescription regimen and that Plaintiff could benefit from Percocet. *See id.* at ¶ 22. As such, Defendant Azevedo prescribed Plaintiff Percocet 10/650 three-times per day, which was administered to Plaintiff until February 22, 2010, when he was transferred to the Special Housing Unit ("SHU") at Franklin Correctional Facility ("Franklin") for disciplinary reasons. *See id.* at ¶ 22.

According to Plaintiff and his medical records, Plaintiff only received his prescribed Neurontin while he was at Franklin, although he was offered over-the-counter pain medication, which he refused. *See id.* at ¶ 24 (citation omitted). On or about March 8, 2010, Plaintiff was transferred back to Upstate. On March 8, 2010, Defendant Azevedo met with Plaintiff to review his medical situation and again prescribed Ultram in addition to the Neurontin Plaintiff was still taking. *See id.* at ¶ 25 (citation omitted). On the following day, Plaintiff again asked to be prescribed Percocet, but this request was denied since Plaintiff was "witnessed by the nurse walking with a steady gait and without any difficulty." *See id.* at ¶ 26 (citation omitted). Plaintiff was, however, prescribed Ibuprofen to be taken as needed. *See id.* (citation omitted).

According to the medical record, over the next two weeks, Plaintiff again requested Percocet but was never observed to be in apparent pain. *See id.* at ¶ 27 (citation omitted). Defendant Azevedo examined Plaintiff again on March 22, 2010 and recommended that he undergo surgery for his condition. *See id.* at ¶ 28. Plaintiff refused to "sign an agreement for orthopedic surgery, asserting . . . his belief that he would soon be released from incarceration . . . and would possibly agree to orthopedic surgery in the future." *See id.* At this point, Defendant

3

Azevedo again prescribed Plaintiff Percocet, which was intended to be a temporary measure since Plaintiff was scheduled to be released in a few weeks. *See id.* at ¶ 29. On June 23, 2010, the medical record indicates that Plaintiff's prescription was changed to Endocet, which is a different brand name for acetaminophen and oxycodone. *See id.* at ¶ 32 (citation omitted).

In his complaint, Plaintiff alleges that Defendants' actions amounted to deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution. In his motion to amend the complaint and documents filed in support of his motion to amend, Plaintiff includes an apparent claim against the "sick-call Nurse"[3] and Dr. Cahill from Franklin for denial of his medication while incarcerated there. *See* Dkt. Nos. 53, 55, 57.

On June 21, 2011, Defendants filed a motion for summary judgment. *See* Dkt. No. 26. In their motion, Defendants argue that they are entitled to summary judgment for the following reasons: (1) Defendants cannot be subjected to damages in their official capacities; (2) Defendant Wright was not personally involved in the purported infliction of cruel and unusual punishment on Plaintiff; (3) Plaintiff fails to establish a medical indifference claim against Defendant Azevedo; and (4) Defendants are otherwise entitled to qualified immunity. *See* Dkt. No. 26-5 at 11-17.

### III. DISCUSSION

---

[3] Although it is not entirely clear in the record before the Court, the "sick-call Nurse" appears to be Nurse White.

4

**A.     Summary judgment standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court

is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Official capacity claims**

The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 90-100 (1984). It is well-settled that states are not "persons" under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Moreover, this immunity extends to state agencies and state officials sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

The Second Circuit has held that DOCCS employees are state officials for purposes of section 1983. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Booker v. Rock*, No. 9:11-CV-247, 2012 WL 501629, *2 (N.D.N.Y. Jan. 31, 2012) (citations omitted). In light of this

authority, the Court grants Defendants' motion for summary judgment as to Plaintiff's official capacity claims.

**C.     Personal involvement**

Defendants contend that Defendant Wright was not personally involved in the alleged Eighth Amendment violations. *See* Dkt. No. 26-5 at 12. Defendants claim that Plaintiff admits that he joined Defendant Wright in this lawsuit because he is "head of the doctors" who are employed by DOCCS and because Defendant Wright had notice of his complaints through a number of letters Plaintiff sent to Defendant Wright's attention and because he failed to correct the unconstitutional conduct. *See* Dkt. No. 26-2 at 26.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation and other citations omitted). "'[W]hen monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.)). There is a sufficient showing of personal responsibility of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation. *See id.* (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

7

It is well-settled that receipt of letters or grievances, by itself, does not amount to personal involvement. *See Vega v. Artus*, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009). Further, "[p]rison supervisors are entitled to refer letters of complaint to subordinates, and rely on those subordinates to conduct an appropriate investigation and response, without rendering the supervisors personally involved in the constitutional violations alleged in the letters of complaint." *Id.* at 199 n.13 (citations omitted); *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

In the present matter, the record makes clear that Defendant Wright did not personally review Plaintiff's letters of complaint, but simply referred them to Regional Health Services for investigation. *See* Dkt. No. 26-4 at ¶¶ 9-10; Dkt. No. 26-4 at Exhibit "A." The record also makes clear that Rita Grinbergs, Regional Health Services Administrator, responded to Plaintiff's complaint letters, indicating what actions had been taken in response to them. *See* Dkt. No. 26-4 at Exhibit "A." Further, Plaintiff fails to provide any facts indicating that Defendant Wright created a policy or custom that allowed unconstitutional practices to continue unabated, or which would establish that he was grossly negligent in managing his subordinates.

Based on the foregoing, the Court finds that Defendant Wright was not personally involved in any of the alleged unconstitutional conduct; and, therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims against Defendant Wright.

**D.    Deliberate indifference**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition includes any "unnecessary and wanton infliction of pain" on those who have been convicted of crimes. *Hathaway v. Coughlin*, 37 F.3d

8

63, 66 (2d Cir. 1994) (citations omitted). Nevertheless, the United States Supreme Court has recognized that not "every injury" a prisoner suffers "translates into constitutional liability for prison officials." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In order to establish a claim for unconstitutional denial of medical care, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Hathaway*, 37 F.3d at 66 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976)). This standard requires proof of both an objective and subjective element. *See Bain v. Hsu*, No. 1:06-CV-189, 2010 WL 3927589, *4 (D. Vt. Sept. 29, 2010) (citing cases).

First, the prisoner must demonstrate that the alleged deprivation was of an objectively "sufficiently serious" nature. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This can be shown by proving "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990). Courts have also considered factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

If there is a complete failure to provide treatment, the court must look to the seriousness of the inmate's medical condition. *See Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). If, on the other hand, the complaint alleges that treatment was provided but was inadequate, the seriousness inquiry is more narrowly confined to that alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "For example, if the prisoner is receiving on-going treatment and the

9

offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith*, 316 F.3d at 185).  In other words, at the heart of the relevant inquiry is the seriousness of the medical need, and whether from an objective viewpoint the temporary deprivation was sufficiently harmful to establish a constitutional violation.  *See Smith*, 316 F.3d at 186.  Of course, "when medical treatment is denied for a prolonged period of time, or when a degenerative medical condition is neglected over sufficient time, the alleged deprivation of care can no longer be characterized as 'delayed treatment', but may properly be viewed as a 'refusal' to provide medical treatment." *Id.* at 186 n.10 (quoting *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)).

Second, to satisfy the subjective prong, a prisoner must show that "the prison official knew of and disregarded his serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  It is not enough to merely disagree over the proper course of treatment.  *See Chance*, 143 F.3d at 703.  Rather, a prisoner must demonstrate that the prison official acted intentionally, for example, by "intentionally denying or delaying access to medical care or intentionally interfering with . . . treatment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Deliberate indifference is a mental state equivalent to subjective recklessness as the term is used in criminal law.  *See Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839-40, 114 S. Ct. 1970).  Mere negligence on the part of a physician or other prison medical official in treating or failing to treat a prisoner's medical condition, on the other hand, does not implicate the Eighth Amendment and is not properly the subject of a section 1983 action.  *See Estelle*, 429 U.S.

10

at 105-06; *Chance*, 143 F.3d at 703. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106.

In the present matter, the record makes clear that Plaintiff was never denied pain medications while at Upstate and Plaintiff does not claim otherwise. The only allegations regarding his pain medication are that Defendants were deliberately indifferent when they took him off of Percocet. At the times when Plaintiff was taken off Percocet, he was provided with another medication regimen consisting of Ultram and Neurontin to manage his pain. *See* Dkt. No. 27 at 19, 20. 27, 34, 39, 43, 46, 56, 57, 58, 67, 68, 69, 71, 72, 73, 74, 78. Moreover, on several occasions Plaintiff refused to consent to surgery on his hip and ankle, which was recommended by his treating physician to alleviate his pain. *See id.* at 41; Dkt. No. 26-3 at ¶ 28. The evidence contained in the medical record completely belies any claim that Defendants were deliberately indifferent to Plaintiff's serious medical needs while he was incarcerated at Upstate. *See Rush v. Fischer*, No. 09 Civ. 9918, 2011 WL 6747392, *3 (S.D.N.Y. Dec. 23, 2011) (finding that the defendants were not deliberately indifferent when they discontinued his treatment with Percocet but instead prescribed a medication regiment consisting of Baclofen and Ibuprofen to manage his pain); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (holding that a prisoner's claim that Motrin medication was insufficient and that stronger pain medication was required for his wrist injuries did not state a deliberate indifference claim); *Reyes v. Gardener*, 93 Fed. Appx. 283, 285 (2d Cir. 2004) (finding that defendants' decision to prescribe Tylenol or Motrin to manage a prisoner's pain and to administer Demerol or Morphine only when necessary did not constitute deliberate indifference); *Harris v. Westchester Cnty. Med. Ctr.*, No. 08 Civ. 1128, 2011 WL 2637429, *3 (S.D.N.Y. July 6, 2011) (holding that "[t]he failure to provide stronger pain medication does not constitute deliberate indifference"); *Wright v. Genovese*, 694 F. Supp. 2d

11

137, 160 (N.D.N.Y. 2010) (holding that "[d]ifferences in opinions between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's 'serious' medical needs"); *Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) (holding that a medical providers' decision not to prescribe stronger pain medication than Tylenol to address a prisoner's back condition did not state a claim for deliberate indifference); *Ortiz v. Makram*, No. 96 Civ. 3285, 2000 WL 1876667, *9-*10 (S.D.N.Y. Dec. 21, 2000) (holding that a doctor's decision to prescribe Motrin in lieu of Percocet for a prisoner's medical condition did not amount to deliberate indifference, even when that decision contravened the recommendation of a specialist). Finally, nothing in the record shows that Defendants intentionally or deliberately denied or delayed Plaintiff's medical care. Rather, the record indicates that Plaintiff was consistently provided with more than adequate medical care during his time at Upstate.

Based on the foregoing, the Court grants Defendants motion for summary judgment as to Plaintiff's deliberate indifference claims.

**E.     Qualified immunity**

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

12

> This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*."

*Mollica v. Volker*, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting *Anderson v. Creiehton*, 483 U.S. 635, 640 (1987)) (emphasis in original). "Where the right at issue in the circumstances confronting police officers . . . was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if . . . it was objectively reasonable for them to believe their acts did not violate those rights.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted).

"Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." *Manganiello v. City of New York*, 612, F.3d 149, 165 (2d Cir. 2010) (citations omitted). "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness. . . . That is, '[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context.'" *Id.* (quotations omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). "The ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.*, whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, '[a] contention that . . . it was

13

objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case."'" *Id.* (quotation and other citations omitted).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

In the present matter, even assuming that the record now before the Court can be construed to support an otherwise cognizable claim of deliberate indifference, the Court concludes that Defendants are entitled to qualified immunity. In a declaration submitted in support of the motion for summary judgment, Defendant Azevedo's decision to place Plaintiff on Neurontin and Ultram instead of Percocet and Neurontin in January and March of 2010 were "appropriate medical determinations that both provided effective analgesia and minimized adverse effects." *See* Dkt. No. 26-3 at ¶ 33. The record further indicates that Plaintiff was never observed to be in apparent pain or distress while on either of these combinations of medication and that the decision to change Plaintiff's prescription was based on Defendant Azevedo's medical judgment, in consideration of Plaintiff's past treatments and his condition as observed at the time of the decision. *See id.* at ¶ 34.

Based on the foregoing, the Court finds that it was not objectively unreasonable for Defendants to believe that their actions did not violate Plaintiff's Eighth Amendment rights; and,

14

therefore, Defendants are entitled to qualified immunity. *See Smith v. Wurzberger*, No. 9:05-CV-968, 2008 WL 2157127, *7 (N.D.N.Y. Mar. 27, 2008).

**F.     Plaintiff's motion to amend**

Leave to file an amended complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

> It is true that when a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). However, the rule is different where, as here, the cross-motion is made in response to a Fed. R. Civ. P. 56 motion for summary judgment, and the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions. In the latter situation, even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed. R. Civ. P. 56(c).

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citations omitted).

In Plaintiff's motion to amend his complaint, Plaintiff attempts to add deliberate indifference claims against the medical staff at Franklin for the time that he spent there from February 22, 2010, through March 8, 2010. Specifically, Plaintiff seeks to add Dr. Cahill and Nurse White as Defendants in this action for their deliberate indifference to his serious medical needs while he was incarcerated at Franklin. *See* Dkt. Nos. 53, 55, 57.

15

As with his claims for deliberate indifference against the medical staff at Upstate, the record makes clear that Plaintiff received constant and adequate medical care while incarcerated at Franklin. *See* Dkt. No. 34. Plaintiff was continually provided with his prescribed Neurontin and the medical staff at Franklin repeatedly offered Plaintiff over-the-counter pain medication to be taken in conjunction with the Neurontin, which he refused. *See id.* at 4, 5; Dkt. No. 27 at 47, 48, 53. Furthermore, on February 26, 2010, the medical staff at Franklin took Plaintiff off of Neurontin because Plaintiff was "fasting" and they discussed with him the problem of taking such medication while not eating. *See* Dkt. No. 34 at 6-7; *Brown v. Graham*, No. 9:07-CV-1353, 2010 WL 6428251, *13 n.31 (N.D.N.Y. Mar. 30, 2010) (noting that "[t]he fact that plaintiff risked undermining his health by conducting a voluntary hunger strike undercuts his claim of deliberate indifferent to serious medical needs" (citations omitted)); *see also Green v. Phillips*, No. 04 Civ. 10202, 2006 WL 846272, *5 (S.D.N.Y. Mar. 31, 2006) (noting that the plaintiff chose to go on a hunger strike, which contributed to his medical problems, in ruling that the plaintiff failed to allege a plausible claim for deliberate indifference to his medical needs); *Amin v. County of Onondaga New York*, No. 5:02-CV-320, 2006 WL 1650764, *8 (N.D.N.Y. June 13, 2006) (holding that the plaintiff's non-compliance with medical advice and treatment supported summary judgment on deliberate indifference claim); *Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986) (finding that the plaintiff's history of declining treatment by prison doctors undermined his claim that they were deliberately indifferent in failing to treat his back issues). Finally, the medical record makes clear that none of the medical staff at Franklin ever observed Plaintiff in apparent pain or distress from his medical conditions, despite their decision to not provide Plaintiff with Percocet.

16

Based on the foregoing, the Court finds that the record makes clear that Plaintiff's claims fall far short of establishing deliberate indifference to a serious medical need. *See Brown v. White*, No. 9:08-cv-200, 2010 WL 985184 (N.D.N.Y. Mar. 15, 2010) (finding that the medical staff's refusal to prescribe Percocet to treat the plaintiff's back pain was not deliberate indifference even though he had been given similarly potent pain killers at other prisons); *Estelle v. Gamble*, 429 U.S. at 100-101, 106-07 (holding that an inmate who alleged that doctors did not credit his repeated assertions that severe back pain should preclude him from manual labor did not state a claim for deliberate indifference where the medical staff repeatedly saw and treated him, even if their lack of diagnosis and inadequate treatment constituted malpractice). Since Plaintiff's proposed amendments fail to create any triable issues of fact and because Defendants would be entitled to judgment as a matter of law, the Court denies Plaintiff's proposed amended complaint as futile. *See Milanese*, 244 F.3d at 110 (citations omitted).[4]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to amend the complaint is **DENIED** as futile; and the Court further

---

[4] The Court also finds, in the alternative, that Dr. Cahill and Nurse White would be entitled to qualified immunity for the same reasons as set forth above regarding Defendants' motion for summary judgment.

17

**ORDERS** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal taken from this Memorandum-Decision and Order would not be taken in good faith; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 5, 2012
      Albany, New York

/s/ Mae A. D'Agostino
Mae A. D'Agostino
U.S. District Judge